**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-2251**

NATHANIEL L. CURTIS,

Plaintiff - Appellant,

versus

MONTGOMERY COUNTY PUBLIC SCHOOLS, Officially
known as: Montgomery County Board of
Education; THERASSE GILES; MARLA LEVINE; PAULA
GORDON; ROCHELLE KRAUS; DR. STAN SCHAUB;
ELIZABETH L. ARONS, ED.D; DONALD KOPP; LARRY
A. BOWERS; ROBERT H. HACKER; ROBERT S.
SHAFFNER; MONTGOMERY COUNTY BOARD OF
EDUCATION; MONTGOMERY COUNTY, MARYLAND,

Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. Peter J. Messitte, District Judge. (CA-
00-2687-PJM; CA-01-860-PJM)

Submitted: July 16, 2007          Decided: July 24, 2007

Before MICHAEL and MOTZ, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed by unpublished per curiam opinion.

Ralph T. Byrd, Laytonsville, Maryland, for Appellant.  Charles W.
Thompson, Jr., County Attorney, Marc P. Hansen, Deputy County
Attorney, Patricia P. Via, Principal Counsel for Litigation, Sharon

V. Burrell, Principal Counsel for Self-Insurance Appeals, Rockville, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A permanent employee of the Montgomery County Public Schools asserts that the Montgomery County Board of Education violated his Fourteenth Amendment right to due process by firing him without adequate pre-dismissal notice. The district court rejected this claim, granting summary judgment to the Board of Education. We affirm.

I.

In 1997, Nathaniel Curtis began working as an instructional assistant at Brown Station Elementary School. Through his employment, Curtis participated in a mentoring program. After Curtis invited his mentees to his house and had individual lunches with them, Principal Paula Gordon met with Curtis to discuss parental concerns, and issued written guidelines for the mentoring program. Two teachers who worked with Curtis subsequently expressed concern to Gordon that Curtis had an unhealthy relationship with some of his mentees.

Gordon sought advice from her supervisor, who referred the case to the personnel department. In a letter dated April 16, 1999, Dr. Elizabeth Arons, Director of Personnel Services, notified Curtis that he was being placed on administrative leave with salary, pending an investigation into allegations of inappropriate conduct with students. After notifying Curtis of his suspension

-3-

with pay, the Board of Education then contacted the police and initiated its own internal investigation. During the course of the Board's investigation, Curtis was given an opportunity to meet in person with investigators to respond to the allegations against him, and to respond to written questions about his conduct. He met with investigators for, in his own words, "well over an hour on Tuesday, April 20" to discuss the charges against him, and he sent the Board detailed written responses to questions on April 30.

Based on the internal investigation, Rochelle Kraus (a staffing specialist) recommended that Curtis be dismissed. Various members of the personnel department agreed, and after reviewing the entire file, Larry A. Bowers, the Acting Deputy Superintendent of Schools, notified Curtis of his dismissal by letter dated May 26, 1999.

The Board provided Curtis with an extensive post-termination process. The May 26 letter explained that Curtis could appeal the decision through a contractually agreed upon grievance procedure, and informed Curtis where he could find information about the process. Upon receipt of the May 26 letter, Curtis filed a grievance with the Board of Education. Two separate hearing officers, Robert Hacker and Robert Shaffner, heard Curtis's grievance pursuant to the administrative process. They both upheld the Board's decision to discharge Curtis. Curtis failed to pursue an available third level of this administrative process.

Curtis filed two civil actions against the Montgomery County Board of Education and various individual defendants, which the United States District Court for the District of Maryland consolidated and stayed pending the outcome of state court litigation. The district court then granted the defendants' motions for summary judgment. With respect to the lone issue Curtis raises on appeal, the district court concluded that Curtis was given adequate notice and an opportunity to be heard before he was fired.

## II.

The parties agree that Curtis held a property interest in his continued employment with the school system, which could only be deprived "pursuant to constitutionally adequate procedures." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). The only issue before us is whether Curtis received sufficient notice before he was dismissed on May 26, 1999. Curtis concedes that he had notice of the serious allegations against him, but asserts that he was not given notice of the possible consequences of the investigation. We hold that he was provided with all of the notice he was due.

In Loudermill, the Supreme Court explained that the Constitution requires that an employee be given "notice and an opportunity to respond" before being dismissed. Id. at 546. This

pre-termination process, the Court explained, need only provide "an initial check against mistaken decisions," when, as in this case, it is followed by a full post-termination hearing.  Id. at 545.

Curtis does not dispute that before his dismissal he was notified of the charges against him and provided an opportunity to present his side of the story both in a meeting and in writing. Curtis contends that this pre-termination process was nevertheless insufficient because he was not given formal notice that his dismissal was a possible outcome of the Board's investigation. Curtis points to the Loudermill Court's statements that the pre-termination process should determine "whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action," and that due process requires "[t]he opportunity to present reasons . . . why proposed action should not be taken," id. at 545-46.

Loudermill, however, does not make detailed pre-termination notice of the possible range of proposed disciplinary actions a formal requirement of due process.  In fact, the Loudermill Court articulated the precise process due before dismissal: "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  Id. at 546 (emphasis added).  This list was meant to be exhaustive.  As the Court explained, "[t]o require more than this prior to termination

would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." Id. Neither Loudermill nor any other case from the Supreme Court makes detailed notice of the possible disciplinary actions a formal requirement of pre-dismissal process.

Curtis relies heavily on a First Circuit case, Cotnoir v. Univ. of Me. Sys., 35 F.3d 6, 11-12 (1st Cir. 1994), the only case from the courts of appeals to find a pre-dismissal process insufficient for not notifying the employee of the proposed termination.* Cotnoir, however, presents a remarkably different situation from the case at hand. In that case, the dismissed employee, a college professor, was given an opportunity to participate in an investigation concerning a student's improper conduct. He was given no reason to believe that he himself could be dismissed from his job as a result of the investigation, and so lacked a meaningful opportunity to be heard.

---

*This circuit has never held a pre-dismissal process inadequate for failing to provide precise notice of the proposed cause of action. Cf. Gray v. Laws, 51 F.3d 426, 438 (4th Cir. 1995) (finding that a public employee who was given notice of a proposed deprivation and an opportunity to respond "received far more pre-termination process than is constitutionally required"); Hanton v. Gilbert, 36 F.3d 4, 7 (4th Cir. 1994) (quoting Loudermill, 470 U.S. at 546, for the point that prior to termination, "'the tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story'"); Garraghty v. Jordan, 830 F.2d 1295, 1300 (4th Cir. 1987) (same).

In the case at hand, in contrast, the Board notified Curtis in writing on April 16, 1999, before beginning its internal investigation, that he was being suspended with pay pending the outcome of the investigation. This warning to Curtis -- that he was the subject of the investigation, that the allegations against him were serious, and that he was being placed on indefinite suspension -- should have made him well aware of the possible consequences of the investigation. After receiving the letter, Curtis engaged meaningfully in the pre-dismissal process provided him, responding to the charges against him both in person and in a formal written statement. In so doing, Curtis demonstrated that he was on notice of the serious possible consequences of the Board's investigation. In sum, Curtis received all of the pre-deprivation process he was due.

## III.

For the foregoing reasons, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED